{¶ 24} The outcome in this case hinges upon an interpretation of Ohio's Equine Immunity Statute.[1] That statute provides protection for horse owners from liability based upon the assumption of a known risk.
 {¶ 25} Everyone knows that horses are unpredictable and that riding them may cause injury. In that regard, the statute makes good common sense. If you fall off a horse and break your arm, the Ohio General Assembly sends its sympathy, but no reward. In essence, you assumed a known risk inherent to a dangerous activity.
 {¶ 26} Move the facts around slightly, and you get a different result. If you and your saddle fall off a horse, and the leather belt holding the saddle in place was defective, and if the stable owner knew it was defective, your injuries may be compensable. That makes good sense, too. *Page 9 
 {¶ 27} As a result of the remand in this matter, the following undisputed facts were established for the purpose of this court's review of the trial court's summary judgment exercise:
 {¶ 28} Bofenramp was in the business of selling Christmas trees for profit, and the McGuires were her customers.
 {¶ 29} As part of the Christmas tree-selling process, the McGuires were given a ride on a hay wagon pulled by horses.
 {¶ 30} During the ride in question, the horses took off at a gallop down a sloping driveway on Bofenramp's driveway.
 {¶ 31} There were no brakes on the wagon, and the employee-driver was unable to stop the galloping horses by other means.
 {¶ 32} The wagon tipped and threw the McGuires to the ground. It then had a collision with three parked motor vehicles. The horses never stopped galloping until they and the wagon were wedged inside a grove of trees adjacent to the parking lot.
 {¶ 33} The McGuires were injured.
 {¶ 34} The driveway upon which the galloping and collision happened was not a "roadway" as defined in the Ohio Revised Code.
 {¶ 35} Ohio law does not require that hay wagons be equipped with brakes when operating off-road.
 {¶ 36} The trial court entered summary judgment based upon the "equine immunity" found in R.C. 2305.321. However, the trial court overlooked a critical exemption from the blanket immunity which that statute provides. As with all immunities, the protection from liability is not absolute. The statute clearly "forfeits" *Page 10 
the immunity if "(a) [a]n equine activity sponsor * * * or other person provides to an equine activity participant faulty or defectiveequipment or tack and knows or should know that the equipment or tack is faulty or defective, and the fault or defect in the equipment or tack proximately causes the harm involved."[2]
 {¶ 37} If you take the facts established by the record in this matter, you are left with these unanswered questions: is a hay wagon — without brakes, filled with children, and pulled by horses — a defective piece of equipment? Should the hay wagon owner know that horses pulling wagons full of children could, on occasion, break into a full gallop and, then, throw the children to the ground? Did the absence of brakes cause the injuries complained of? To ask the questions is to frame the dilemma. A room full of farmers, riders, engineers, lawyers, and children could all come to different, albeit reasonable, answers to these questions.
 {¶ 38} Civ.R. 56(C) directs that summary judgment can only be entered when reasonable minds can come to but one conclusion, and that conclusion is adverse to the injured children. I am unable to state, as a matter of law, that the tragic outcome in this case did not result from the use and operation of faulty or defective equipment. I believe there are questions of fact that remain to be answered by a jury.
 {¶ 39} The matter should be remanded for trial.
[1] R.C. 2305.321.
[2] (Emphasis added.) R.C. 2305.321(B)(2)(a). *Page 1